**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL CASE NO. 1:06cv97**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| **JERRY O. ADAMS, III,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the motion of the United States

for a preliminary injunction to enjoin the Defendant from preparing tax

returns during the pendency of this action.  The Defendant has responded.

For the reasons stated herein, the motion is granted.


**PROCEDURAL HISTORY**

The United States initiated this action on March 22, 2006 by filing a

complaint seeking permanent injunctive relief against Jerry O. Adams, III

(Adams) to enjoin him from preparing federal income tax returns for

taxpayers and from engaging in activity which violates federal law or interferes with the administration and enforcement of internal revenue laws. **Complaint and Request for Injunctive Relief, filed March 22, 2006.** On April 4, 2006, the United States filed a motion for a preliminary injunction to enjoin Adams from such conduct during the pendency of this action. **United States' Motion for a Preliminary Injunction, filed April 4, 2006.** On April 7, 2006, Tony Treat, an Internal Revenue Service (IRS) revenue officer, filed an affidavit in which he averred that on April 6, 2006 he personally served Adams with the summons and complaint, the motion for a preliminary injunction and supporting affidavits. **Affidavit, filed April 7, 2006.** After having been given an extension of time, Adams filed an answer to the complaint and a response to the motion for a preliminary injunction. **Answer to Complaint and Request for Injutive (sic) Relief, filed May 17, 2006.**

## FACTUAL ALLEGATIONS

In support of the motion, the United States has filed several affidavits. Charmaine Gill (Gill) averred that in January 2005, she went to First Choice Tax Service (First Choice) for the preparation of her 2004

federal income tax return.  **Affidavit of Charmaine L. Gill, filed April 4, 2006.**  First Choice was located in Adams' home.  **Id.**  Attached to her affidavit is a copy of her 2004 tax return which contains a disclosure that the return was prepared by "Brain G. Adams."[1]  **Id.**  Gill avers however that the Defendant prepared her return, not Brian Adams.  **Id.**  Gill also avers that her 2004 return overstated the amount of wages she received and the amount of taxes withheld from those wages.  **Id.**  In fact, the return reported wages earned and taxes withheld from an employer for which Gill did not work at all during 2004.  **Id.**  The return indicated that a refund was due to Gill of $4,645.00.  **Id.**  This was an incorrect amount to which she was not entitled.

Brian Adams as the sole proprietor of First Choice obtained an electronic filing number for the filing of income tax returns on October 30, 2003.  **Declaration of Kathy Grimaldi, filed April 4, 2006.**  Brian Adams is the Defendant's son.  **Id.**  In an undated letter to the Department of Treasury, the Defendant identified himself as a tax return preparer and stated that the returns which he prepared were transmitted to the IRS by

---

[1]This appears to be a typographical error in the spelling of the name "Brian."

his son, Brian Adams.  **Exhibit B, attached to Grimaldi Declaration.**  The letter references events occurring in 2005.  **Id.**  In July 2005, the Defendant wrote a letter to the customers of First Choice in which he admitted preparing tax returns in 2004.  **Exhibit C, attached to Grimaldi Declaration.**  Apparently, the IRS made refunds to these individuals which were directly deposited into accounts held at a certain bank.  **Id.**  The bank withheld from the refund deposits funds in the amount of the fees charged by the Defendant and/or First Choice for the preparation of the tax returns, apparently because the bank had a judgment against the Defendant and/or First Choice which it was collecting.  **Id.**  The Defendant, however, wrote to the customers advising them that they still owed those fees directly to him because the bank had not released the fees.  **Id.**  He advised each of them by letter to send a check or money order made payable to "Jerry O. Adams in the amount of $205" to a post office box in Shelby, North Carolina.  **Id.**  And, he admonished that unless he received payment within 15 days, the matter would be referred to a collection agency.  **Id.**

IRS Agent Kathy Grimaldi analyzed 28 of the 884 tax returns prepared for the 2003 by First Choice.  **Id.**  Three of those returns were actually prepared by the Defendant and each of them overstated the

4

amount of refund due to the taxpayer.  **Id.**  All but four of those 28 returns listed Brian Adams as the tax preparer.  **Id.**  This pattern continued for the tax returns prepared for 2004.  **Id.**  The amounts of wages were overstated; the amounts withheld were overstated; and refunds in excess of that actually due were claimed.  **Id.**  In addition, some returns claimed mortgage interest deductions without any such interest having been reported by financial institutions.  **Id.**  However, Agent Grimaldi did not state how many of those returns were actually prepared by the Defendant. **Id.**  In view of his letter to customers of First Choice demanding payment for his tax preparation services for the tax year 2004, the Defendant has admitted that he prepared such returns.

Jeannie Tillman is the president of a cable television station. **Declaration of Jeannie Tillman, filed April 4, 2006.**  She averred that in January, February and March of 2006, the Defendant ran commercials on her station advertising "Jerry O. Adams & Associates" identified as "Your social security and tax professionals."  **Id.**  The commercial touted the firm as being able to assist with tax preparation and tax debt reduction.  **Id.**  A photograph of the Defendant was run with the commercial.  **Id.**

## STANDARD OF REVIEW

A civil action in the name of the United States to enjoin any person who is an income tax return preparer from further engaging in any conduct described [herein] or from further acting as an income tax return preparer may be commenced at the request of the Secretary.

> ...
>
> [I]f the court finds that
>> (1) an income tax return preparer has
>>> (A) engaged in any conduct subject to penalty under section 6694 or 6695,[2] or subject to any criminal penalty provided by [T]itle [26], [or]
>>>
>>> ...
>>> (D) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws, and
>>
>> (2) that injunctive relief is appropriate to prevent the recurrence of such conduct,
>
> the court may enjoin such person from further engaging in such conduct.  If the court finds that an income tax return preparer has continually or repeatedly engaged in any conduct described [above] and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court may enjoin such person from acting as an income tax return preparer.

**26 U.S.C. §7407(a) & (b).**

While there is some case law to the effect that where a statute

_____

[2]26 U.S.C. §6694 penalizes the understatement of a taxpayer's liability by an income tax return preparer.  26 U.S.C. §6695 penalizes other omissions and acts by tax return preparers, such as the failure to file correct information returns.

expressly authorizes injunctive relief, such relief may issue without resort to the tradition equitable prerequisites,[3] the Court notes that this motion comes before the Court prior to discovery seeking a preliminary injunction. "[T]he purpose of a preliminary, as opposed to a final, injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" **Capital Tool and Manufacturing Co., Inc. v. Maschinenfabrik Herkules, 837 F.2d 171, 172 (4th Cir. 1988).**

> Typically-and this is a typical case-the parties do not provide the court sufficient information to decide the merits of the case when application is made for a preliminary injunction. For this reason a district court must balance the hardship the parties will suffer pending trial according to the factors set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189 (4th Cir. 1977).

**Id.**

As a result, the traditional balancing principles must be applied. **Id.** Nonetheless, "[w]here a statute authorizes injunctive relief fo enforcement, [the United States] need not plead and prove irreparable injury." **Environmental Defense Fund, Inc. v. Lamphier, 714 F.2d 331, 338 (4th Cir. 1983).** Thus, the traditional test will be modified to reflect this lack of burden.

---

[3]**See,** *e.g.***, United States v. Green, 2004 WL 3187029 (E.D.Va. 2004); United States v. Mosher, 2003 WL 21153355 (W.D.Mich. 2003).**

The traditional office of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits. Indeed, the maintenance of the status quo is justified only insofar as it aids the court in granting final relief. Therefore, "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," but conversely, preliminary relief may never be granted that addresses matters "which in no circumstances can be dealt with in any final injunction that may be entered.

...

In sum, preliminary injunctions are extraordinary interlocutory remedies that are granted in limited circumstances and then only sparingly. The limited circumstances amount to the demonstration of a need to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits. If that need is not presented, then a preliminary injunction should not be considered. But if the need is demonstrated, then the entry of a preliminary injunction rests in the discretion of the district court, which is informed by balancing factors under an analysis conducted pursuant to the familiar four-part test described in *Blackwelder*. Under this test

> a court should consider (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;[4] (2) the likelihood of harm to the defendant if the relief is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4)the public interest.

In applying this four-factor test, "[t]he irreparable harm to the plaintiff and the harm to the defendant are the two most important factors." Emphasis on the balance of these first two factors results in a sliding scale that demands less of a showing of likelihood of success on the merits when the balance of hardships weighs strongly in favor of the plaintiff, and vice versa.

---

[4]As noted *infra*, this factor need not be shown by the United States.

**In re Microsoft Corporation Antitrust Litigation, 333 F.3d 517, 525-26 (4th Cir. 2003); accord, East Tennessee Natural Gas Co. v. Sage, 361 F.3d 808, 828 (4th Cir. 2004).**

## DISCUSSION

In the response to the motion for a preliminary injunction, the Defendant has admitted that he is and has been a tax return preparer since 1984. **Defendant's Response to Deny the Motion for a Preliminary Injunction, filed May 17, 2006, at 2-3.** He also admits that he prepared federal and state tax returns in 2004 and 2005. **Id.** Thus, the Defendant is an income tax return preparer.

The United States has alleged that the Defendant understated on a routine basis the tax liabilities of taxpayers for whom he prepared returns in order to inflate the refunds due to those taxpayers. It has alleged that the Defendant failed to refer to the amounts listed on forms presented by his customers, a referral which would have avoided the understatement and inflation. In response, the Defendant claims that it is the responsibility of each customer to present the correct information and to verify the return as accurate once prepared. He also alleges that the IRS fabricated

documents in order to shut down his place of business, primarily because the IRS is prejudiced against African American tax return preparers.  In support of his allegation that the IRS fabricated documents, he attacks the affidavit of Charmaine Gill, claiming that the tax return she attached to her affidavit is not the return actually filed on her behalf.  The real return, he claims, is attached to his response.  The return which the Defendant attached to his response, however, bears a cover letter dated April 25, 2006 referring to her 2004 tax return.  **Defendant's Exhibit A, attached to Response.**  Gill averred, and the Defendant does not dispute, that he prepared her 2004 tax return in January 2005.  This discrepancy is further highlighted by the documents attached to the April 2006 letter.  Those documents are dated January 2005.   Thus, the letter produced by the Defendant does not support his claim that the IRS fabricated Gill's return. Indeed, it appears that the Defendant may have prepared an amended return or may have altered the return after this lawsuit was filed.

The Defendant failed to make any response to the other issues raised by the United States in its brief.  Thus, based on the pleadings presented at this point in the case, the Court finds that the Defendant has knowingly participated in conduct which has caused on a recurrent and

continual basis the inflation of tax refunds due to tax payers.  **See, *e.g.,***

**United States v. Schiff, 379 F.3d 621, 625 (9th Cir. 2004).**  This conduct

has caused significant expenditure of governmental resources due to the

necessity for the IRS to audit customers of the Defendant and to ascertain

whether they received inflated refunds.  **Id.**  In response, the Defendant

has taken positions that are patently incredible, claiming that the IRS has

fabricated evidence against him.  **Id.**  He also alleges that the IRS is

markedly attempting to put out of business African American tax return

preparers.  **Id.**  And, his occupation allows him to continue this conduct

unchecked.  **Id.**

By contrast, enjoining the Defendant from preparing tax returns

during the pendency of the action will impact his ability to make a living.

However, the extent of that impact is questionable given that the tax

season has now ended.  Moreover, the Defendant admits that he stays at

home during the day to care for the small children in his family, a claim

which refutes his argument that he works daily in this business.  Based on

the evidence presented, and the Defendant's lack of response, the United

States has a likelihood of success on the merits.  Moreover, it is clearly in

the public interest to prevent the preparation of such tax returns.

It is noted, however, that the complaint names only the Defendant individually. No business entity is named as a defendant; thus, the Court must limit the relief sought to the Defendant in his individual capacity. The Defendant is placed on notice, however, that this injunction prohibits him from taking these actions either individually or through others.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion for a preliminary injunction is hereby **GRANTED** and the Defendant is hereby enjoined as follows:

1.    During the pendency of this action, the Defendant is enjoined, both directly and indirectly, from acting as a federal income tax return preparer;

2.    During the pendency of this action, the Defendant is enjoined directly and indirectly from engaging in any conduct subject to penalty pursuant to 26 U.S.C. §§6694 & 6695;

3.    During the pendency of this action, the Defendant is enjoined directly and indirectly from engaging in any conduct that interferes with the administration and enforcement of the internal revenue laws and/or

engaging in conduct subject to penalty pursuant to 26 U.S.C. §6701;

4.   The Defendant is required to provide to the United States on or before 15 days from entry of this Order a list of the names, addresses, email addresses, phone numbers and social security numbers of all individuals or entities for whom the Defendant has prepared or assisted in the preparation of tax-related documents, including claims for refund or tax returns since January 1, 2000.

**IT IS FURTHER ORDERED** that because the Defendant has appeared in a *pro se* capacity, the United States shall effect personal service on him of this Order and shall file proof of service.

The Clerk of Court is instructed to serve this Order on the Defendant by certified mail, return receipt requested.

Signed: May 23, 2006

Lacy H. Thornburg
United States District Judge